IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| YAHYI A. SHIHEED, #455399, <br><br> Plaintiff, <br><br> v. <br><br> CASE MANAGER MS. JOHNSON, <br> PSYCHOLOGY MS. L. BIETZEL, <br> SOCIAL WORKER MRS. MOUNJO, <br> WARDEN KEITH ARNOLD, <br><br> Defendants. | Civil Action No.: SAG-23-1613 |

**MEMORANDUM**

Pending in the above-entitled civil rights case is Defendants' Motion to Dismiss or for Summary Judgment. ECF No. 14 and 22. Plaintiff opposes the motion. ECF No. 28. No hearing is required. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, Defendants' motion shall be denied without prejudice.

**I.  Background**

Plaintiff Yahyi A. Shiheed, who proceeds pro se, alleges that his Eighth Amendment right to remain free from cruel and unusual punishment has been violated by his confinement to administrative segregation since 2022. ECF No. 1 at 3-4. He explains that he was initially placed on administrative segregation on April 10, 2022, after "two incidents in population." *Id*. Although he was initially charged with institutional rule violations in connection with the incidents, he was ultimately found not guilty. *Id*. at 4. He claims his continued assignment to administrative segregation amounts to punishment for something he did not do. *Id*. While Shiheed acknowledges that he has five enemies on his enemies list that are "in population," he claims there is no legitimate

reason for him to be assigned to administrative segregation and takes issue with the administrative segregation review staff who said he "must be on admin for 4 to 5 years before [he] make[s] Max I" and can be transferred to another prison. *Id*. Currently, Shiheed is classified as "Max II."

Defendants explain that Shiheed was attacked by Brandon Thompson on March 28, 2022 as the two men were exiting their housing unit. ECF No. 14-5 at 5; 8-9. "As Thompson was exiting the tier, he approached Shiheed and began striking him with closed fist." *Id*. at 9. Thompson was placed on Shiheed's enemies list as a result of the assault. *Id*. at 8.

Shiheed was removed from administrative segregation on April 10, 2022. ECF No. 14-4 at 1. That same evening, Shiheed was stabbed multiple times while he was in the yard. ECF No. 14-5 at 7. When Shiheed returned from the yard, an officer noticed he had blood on his face and clothing and, upon a search of Shiheed, it was discovered he had suffered several puncture wounds to his body. *Id*. When the security videos were reviewed, inmates Malik Shakur and Darryl Powell were identified as the inmates engaged in an altercation with Shiheed. *Id*. All three inmates were given an infraction because the video was not clear enough to determine who was in possession of the weapon. *Id*. The charges against Shiheed were later dismissed when it was determined that he was the victim of the assault. ECF No. 14-6 at 1.

As with Thompson, Shakur, and Powell were added to Shiheed's enemies list: all three men remain incarcerated at North Branch Correctional Institution ("NBCI") where Shiheed is incarcerated. ECF No. 14-5 at 5, 6. In addition to Thompson, Shakur, and Powell, two additional enemies of Shiheed are also incarcerated at NBCI. *Id*. at 5. Defendants explain that four of Shiheed's enemies, Thompson being the exception, are also classified as Max II security level. ECF No. 14-9 at 3, ¶ 12. NBCI is the only prison in Maryland that houses Max II inmates. *Id*. at 2, ¶ 7. The Max II security level is reserved for inmates "who require the highest level of

supervision, programming, and monitoring due to verified behavior that has posed a threat to life, property, self, other Incarcerated Individuals or facility security." *Id*. at ¶ 6.

Defendants deny telling Shiheed he would be required to remain "infraction free for four (4) to five (5) years before he could be considered for a reduction in security level." ECF No. 14-9 at 2, ¶ 8. Shiheed was actually advised that "he would generally need [to] remain infraction free for at least three (3) years, before being considered for a security reduction." *Id*.

Since being placed on administrative segregation, Shiheed's status has been reviewed "approximately twenty-two (22) times" and he "has only chosen to participate in approximately two (2) of these reviews/interviews." ECF No. 14-9 at 3, ¶ 11. Defendants explain that Shiheed has been kept on administrative segregation to ensure his safety by housing him away from his documented enemies. *Id*. at ¶ 13. Further, whenever an inmate is assigned to administrative segregation for twelve calendar months, the assignment/status is reviewed at the Department of Public Safety and Correctional Services ("DPSCS") headquarters. *Id*. at 3-4, ¶¶ 14-15. Shiheed's twelve-month review was completed in May of 2023 by Deputy Commissioner Cleveland Friday who concurred in the decision to keep him on administrative segregation. *Id*. at ¶ 15.

Defendant Lauren Beitzel, a Licensed Clinical Professional Counselor a NBCI and a member of the Multidisciplinary Team responsible for conducting weekly administrative segregation reviews, states that her "role in administrative segregation reviews is to be present to address any mental health concerns an incarcerated individual may have or to identify any mental health issues that may be present." ECF No. 14-3 at 1, ¶ 4. Beitzel does not provide any information regarding Shiheed's mental health; rather, she simply states that Shiheed refused "to appear at his administrative segregation review on December 7, 2022." *Id*. at 2, ¶ 5.

In his Opposition Response, Shiheed explains that he is confined to his cell 24 hours a day with no access to programs and no human contact. ECF No. 28-1 at 7. In his view, this isolation has a detrimental effect on him because he "won't know how to act around others" after being in administrative segregation for so long. *Id*. He adds that he "sees a Psyc. [sic] Doctor for medications due to psych. issues" he has developed as a result of being isolated for two years. *Id*. Shiheed believes his assignment to administrative segregation amounts to punishment for the assaults others committed against him and states that his assailants should be the ones so assigned as they present a threat to the security of the institution. *Id*. at 9. Shiheed additionally believes that he was set up for the assault that occurred on April 10, 2022. *Id*. at 10, *see also* ECF Nos. 28-2 (Shiheed Decl.), 28-4, 28-5, 28-6, 28-9, and 28-10.

As relief Shiheed seeks an investigation into his case, to be transferred out of the Cumberland, Maryland region, to be awarded $100 per day for each day he has been assigned to administrative segregation, to be awarded compensatory damages of $20,000, for the members of the administrative segregation review team to be suspended for 30 days without pay, and to be transferred out of State. ECF No. 1 at 4-5.

## II.     Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The court may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir.

2007) (citation omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because Defendants filed their motion as a motion to dismiss, or in the alternative, for summary judgment, Plaintiff was on notice that the Court could treat the motion as one for summary judgment and rule on that basis.

### III. Analysis

Defendants assert that Shiheed fails to assert facts to support a claim against former Assistant Warden Keith Arnold, fails to state a cognizable Eighth Amendment claim, and fails to state a viable due process claim. ECF Nos. 14-1, 22-1.

#### A. Assistant Warden Arnold

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory

6

liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The allegation raised by Shiheed against Defendant Arnold is that he was aware of Shiheed's assignment to administrative segregation and approved of that assignment. Because, as further described herein, Shiheed's claims survive the Defendants' motion. The motion shall be denied without prejudice as to Arnold.

### B. Eighth Amendment Claim

Shiheed alleges his involuntary placement in administrative segregation amounts to cruel and unusual punishment as well as a violation of his right to due process. The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"[T]to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal alterations omitted). "These requirements spring from the

text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Lost opportunity to earn diminution credits or to hold a prison job do not suffice.

To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known, excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (applying the deliberate indifference standard to conditions of confinement claims); *see also Thompson v. Virginia*, 878 F.3d 89, 107 (4th Cir. 2017). "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). To survive summary judgment, Shiheed must show facts sufficient for a reasonable factfinder to conclude that (1) he was exposed to a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Thompson*, 878 F.3d at 107 (citing *Farmer*, 511 U.S. at 834, 837-38) (internal quotations omitted). Shiheed asserts that his prolonged isolation in administrative segregation has contributed to a decline in his mental health, for which he must take medications. ECF No. 28-1 at 7-8. Defendants have not disputed that assertion and the record

before the Court provides no basis for rejecting Shiheed's claim. Defendants' motion shall be denied without prejudice on the Eighth Amendment claim.

**C.     Due Process Claim**

Prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Wolff v. McDonnell*, 418 U.S. 539); *Wilkinson v. Austin*, 545 U.S. 209, 210 (2005)). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily . . . . fact specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502-03 (4th Cir. 1997) (quoting *Sandin*, 515 U.S. at 483-84); *accord Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors . . . . requires case by case, fact by fact consideration." (alteration in original) (internal quotation marks omitted)). "*Wilkinson* does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection." *Prieto v Clarke*, 780 F.3d 245, 250 (4th Cir. 2015). Rather, there must exist an interest in avoiding "erroneous placement [in the challenged confinement] under the state's classification regulations *combined with* . . . harsh and atypical conditions" for Due Process protections to apply. *Id.* (emphasis in original) (citing *Wilkinson v. Austin*, 545 U.S. 209, 224-25 (2005)).

"[G]eneral population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015). Where, as in *Bevarati v. Smith*, 120 F.3d 500 (4th Cir. 1997), conditions in segregated confinement are "similar

9

in most respects to those experienced by inmates in the general population" no liberty interest exists in avoiding that segregation assignment. *Beverati*, 120 F.3d at 503. Where an inmate is sentenced to death row, as in *Prieto*, "using the general population to gauge the ordinary incidents of prison life . . . was improper." *Incumaa*, 791 F.3d at 528 (citing *Prieto*, 780 F.3d at 252-54). While the nature of a prisoner's conviction and the length of his sentence do not give rise to differing liberty interests, "state law mandates regarding the confinement conditions to be imposed on offenders convicted of a certain crime and receiving a certain sentence are, by definition, the ordinary incidents of prison life for such offenders." *Id*. (quoting *Prieto*, 780 F.3d at 254).

The Supreme Court found a liberty interest implicated where inmates in Ohio were assigned to the Ohio State Penitentiary (OSP), a super-maximum security prison where almost all human contact was prohibited and communication between cells was forbidden. Exercise was limited to one hour a day in a small indoor room, and the inmates were exposed to light 24 hours per day. *See Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). The court noted that although the conditions alone were not enough to create a liberty interest, when coupled with the indefinite duration of assignment[1] to the prison and the disqualification of an otherwise eligible inmate for parole consideration, the conditions "impose an atypical and significant hardship within the correctional context." *Id*. at 224.

The *Wilkinson* Court found that the process provided to Ohio inmates assigned to OSP complied with due process protections, noting that the Ohio inmates receive written notice 48 hours in advance of a hearing "summarizing the conduct or offense triggering the review" and are provided a prepared form explaining why the review was initiated. *Wilkinson*, 545 U.S. at 216.

---

[1] The District Court noted that the length of an inmate's stay at the prison was a function of the procedures for review in place. *See Austin v. Wilkinson*, 189 F. Supp. 2d 719, 740 (N.D. Ohio 2002). Inmates assigned to the prison could only progress through the various levels after reclassification reviews which were conducted annually and "even inmates with exemplary behavior rarely progress through OSP in less than two years." *Id*.

The Ohio inmate is permitted to attend the hearing where they are allowed to offer "pertinent information, explanation and/or objections to OSP placement and may submit a written statement," but he may not call witnesses.  *Id*.  In addition to the notice and the hearing, the Ohio system included a review of the committee's decision by the warden, who must provide reasons for an approval of an assignment, as well as an additional review by a bureau which is vested with final decision-making authority over all inmate assignments in Ohio.  *Id*.  After these reviews are completed, the inmate is allowed 15 days to file objections with the Bureau and it is only after this 15-day period expires that the inmate is transferred to the facility.  *Id*. at 217.  Inmates who are transferred are given another review within 30 days of their arrival and, thereafter, are reviewed yearly.  *Id*.

> The three factors to be balanced to determine how much process is due are:
>
>> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Wilkinson*, 545 U.S. at 224-25, (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

After the *Wilkinson* decision, at least one court has held that proof of a years-long isolation created a significant risk of substantial psychological and emotional harm which satisfies the objective prong of the Eighth Amendment test for deliberate indifference.  *Porter v. Clarke*, 290 F. Supp. 3d 518, 532 (E.D. Va. 2018).  Similar to the prisoner-plaintiffs in *Wilkinson*, it does not appear that Shiheed has been provided with a clear path to achieve an assignment to general population or a transfer to another prison where he does not have enemies.  Shiheed's observation that his assignment to administrative segregation, where his interaction with others is extremely limited, appears to be indefinite is well taken.

11

The undisputed facts establish several things in this case. Shiheed did not request protective custody but was nevertheless placed in administrative segregation for that purpose. The conditions of his confinement are more restrictive than those imposed on general population. Shiheed has been in administrative segregation for two years and Defendants maintain that he will need to remain infraction free for three to four years before his security level is reduced from Max II to Max I. They further assert that NBCI, where Shiheed's documented enemies remain, is the only prison in Maryland where a Max II inmate may be confined. Shiheed explains that his security level was increased from Max I to Max II in 2020, four years ago and Defendants do not dispute that assertion. ECF No. 28-1 at 10. Defendants have not addressed whether Shiheed is now eligible for a reduction in his security level and if not, what steps he must take to accomplish a reduction in his security level. Further, while Defendants claim that Shiheed may only be transferred to another prison after his security level is reduced, they do not provide any information regarding such a transfer (*i.e.*, where Shiheed may be transferred and whether or not he may be assigned to general population after such a transfer). Nor is there any evidence in this record regarding a development of a case management plan as required by Md. Code Regs. ("COMAR") 12.02.24.04.A; nor any determination that Shiheed's participation in programming should be restricted based on the criteria set forth in COMAR 12.02.24.05.D. Rather, Defendants rely only on Shiheed's alleged refusal to participate in administrative segregation reviews as a basis to refute his due process claim.

Given the status of the record before the Court, the pending motion will be denied without prejudice. Should Defendants choose to renew their motion, they must at a minimum include evidence that: (1) Shiheed's security level has been reviewed as required by relevant regulations, the results of such reviews, and the rationale supporting those results; (2) the case management

plan developed for Shiheed which includes a clear plan for his removal from administrative segregation as well as Shiheed's compliance or non-compliance with such a plan; (3) all psychological assessments for Shiheed dating back to April 10, 2022, specifically focused on his housing assignment and how it has impacted his mental health; and (4) if none of these documents or evidence exist, an explanation as to why they are missing.

## IV.   Conclusion

By separate Order which follows, Defendants' Motion to Dismiss or for Summary Judgment shall be denied without prejudice. Counsel for Defendants will be granted 14 days to file a Notice of Intent indicating whether they intend to proceed to discovery and trial or they intend to file a renewed motion in compliance with this Court's directives stated herein.

<u>May 22, 2024</u>                                              _____/s/_____
Date                                                                    Stephanie A. Gallagher
                                                                             United States District Judge