IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YAHYI A. SHIHEED,

    Plaintiff,

    v.

CASE MANAGER MS. JOHNSON,
PSYCHOLOGY MS. L. BIETZEL,
SOCIAL WORKER MRS. MOUNJO,
WARDEN KEITH ARNOLD,

    Defendants.

Civil Action No.:  SAG-23-1613

**MEMORANDUM**

The above-entitled civil rights complaint was filed by self-represented Plaintiff Yahyi Shiheed, an inmate who was, at relevant times, incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. The suit, which names four NBCI employees as defendants, concerns Shiheed's long-term assignment to administrative segregation at NBCI.[1]

In a Memorandum and Order issued on May 22, 2024, this Court denied without prejudice Defendants' Motion to Dismiss or for Summary Judgment. ECF 30, 31. In doing so, the Court noted that the undisputed facts established that Shiheed had been involuntarily assigned to administrative segregation where he had been housed under conditions more restrictive than those imposed on prisoners in general population and, because he was classified as Max II security, he

---

[1] As detailed herein, Shiheed has since been transferred to and is presently housed at Western Correctional Institution ("WCI"). On October 21, 2024, Shiheed filed a "Motion to Request Protection Custody" relating to his present housing at WCI. ECF 56. None of the Defendants named in this lawsuit work at WCI, nor do they have any control over where Shiheed is housed there. To the extent that Shiheed has concerns regarding his present housing, he must raise such concerns in a new § 1983 suit against the appropriate WCI defendants. His motion, ECF 56, will be denied without prejudice.

could not be transferred to another prison where he had no enemies. ECF 30 at 12. Defendants did not address whether Shiheed was eligible for a reduction in his security level, nor was an explanation offered as to how he might accomplish a reduction. *Id*. Defendants also did not provide the Court with any evidence of a case management plan developed for Shiheed so that his participation in programming might be increased. *Id*. In light of those deficiencies, the Court noted that if Defendants chose to renew their dispositive motion, they would need to include evidence that (1) Shiheed's security level has been reviewed as required by applicable regulations, the results of those reviews, and the rationale supporting the results; (2) the case management plan developed for Shiheed which includes a clear plan for his removal from administrative segregation and his compliance or non-compliance with that plan; (3) all psychological assessments for Shiheed dating back to April 10, 2022; and (4) an explanation as to why any of those documents do not exist, if applicable. *Id*. at 12-13.

On August 12, 2024, Defendants filed a renewed Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF 43. Shiheed opposes Defendants' motion. ECF 53. No hearing is necessary as the issues are fully briefed. *See* L. R. 105.6 (D. Md. 2023). For the reasons stated below, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted. Defendants' unopposed motion to seal the exhibit containing Plaintiff's medical records shall be granted and Plaintiff's motion to appoint counsel shall be denied.

**I.    Background**

The facts of this case were previously summarized in the Court's May 22, 2024 Memorandum and are incorporated herein by reference. *See* ECF 30 at 1-4. The crux of the issue regarding Shiheed's housing assignment has been that he was "Max II" security level, and he has multiple enemies housed in NBCI, the only Max II prison in Maryland. Defendants explain that

Shiheed's security level is a function of his institutional rule violations as well as the nature of his crimes. Between 2018 and 2022, Shiheed was found guilty of more than a dozen inmate rule violations, including (COMAR 12.03.01.04) rule 101 (committing assault or battery on staff), rule 102 (committing assault or battery on any inmate), rule 104 (making threats that include the use of physical harm to objects, property, or individuals), rule 105 (possessing, using, or manufacturing a weapon), rule 116 (possessing, misusing, tampering with, damaging, or destroying security devices, equipment, property, detection or monitoring equipment, or fire suppression or alarm devices), and rule 316 (disobeying orders).  *See* ECF 43-8 (Rule Violation Summary).  Shiheed also received three additional criminal sentences, totaling more than six years, for acts committed while he has been incarcerated: assaulting a correctional officer, second degree assault, and carrying a concealed dangerous weapon. ECF 43-4 at 1. Shiheed is also serving a sentence of life, all but 30 years suspended, for attempted first-degree murder, 20 years concurrent for use of a handgun in the commission of a felony, and 20 years concurrent for witness intimidation.  *Id*.

The enemies Shiheed has acquired during the course of his incarceration include Michael Crudup, the nephew of the man Shiheed solicited to kill the surviving victim of his crime so he could not testify against him (ECF 43-4 at 19); Dominick Brooks, who was assaulted and stabbed with a 6.5-inch shank wielded by Shiheed on July 26, 2019 (*id*. at 14); and Brandon Thompson, who attacked Shiheed on March 28, 2022 (*id.* at 9).  The parties also agree that Shiheed's return to general population on April 10, 2022, resulted in his being stabbed that same day. *Id*. at 7. Although Shiheed maintains that the April 10, 2022 assault was a set-up, he provides no objective evidence to support that conclusory allegation.

Shiheed maintains that he was placed on administrative segregation for punishment, but at the same time claims that Defendants have not done enough to protect him from the violence of

3

other inmates. ECF 52-1 at 10-11. He contends that he lost his job and that an assignment to administrative segregation for six months or longer is an Eighth Amendment violation. *Id*. at 11. Shiheed states he has been assigned to administrative segregation since 2019 and must take Prozac to keep from developing a mental illness. *Id*.

Records submitted by Defendants demonstrate the following facts regarding Shiheed's housing assignment and possible transfer: Shiheed's last sustained infraction occurred on March 24, 2021 for possession of weapons that were found in his cell in violation of Rule 105 (possessing, using, or manufacturing a weapon). ECF 43-8 at 1. He was sentenced to 90 days segregation and revocation of 90 days of good conduct credit. *Id*. His present assignment to administrative segregation is unrelated to any disciplinary charges.

After Shiheed had been in administrative segregation for one-year, Case Management staff conducted his first annual review on or about April 26, 2023. ECF 43-10. At the time, he had been infraction-free for two years. *Id*. Reviewers noted that a transfer was not feasible because Shiheed's security level was Max II. *Id*. Case Management recommended that he "remain on administrative segregation, at this time, for his safety and to determine appropriate housing." *Id*. The Headquarters Case Manager, Angela Swan, agreed that for Shiheed's safety and the safety of the institution, "a recommendation to remain administrative segregation is warranted." ECF 43-11 at 1. Swan also commented that the team may consider a transfer via the Interstate Corrections Compact ("ICC") given Shiheed's projected mandatory supervision release ("MSR") date of May 16, 2050. *Id*. at 1 and 2.

On April 24, 2024, Shiheed had another annual review. ECF 43-12. Case Management staff at NBCI again recommended "that Shiheed remain on administrative segregation, at this time, for his safety and security" and noted that when Shiheed was "housed in general population he

4

was the victim of assault and also the documented aggressor." *Id*. It was again noted that "[a] transfer is not feasible due to Shiheed being MAX II." *Id*. This time, the headquarters case management reviewed the recommendation from NBCI case management and observed that Shiheed had been housed on administrative segregation for two years and had no infractions for three years. ECF 43-13 at 1-2. Based on those factors, headquarters recommended that Shiheed's security status be reduced to Max I. *Id*. at 1. The headquarters case management team provided a rationale for reducing Shiheed's security level, noting that reducing his security would give Shiheed the "opportunity for lower level testing at another facility." *Id*. The headquarters staff also noted that Shiheed has served eight years of his sentence; he has been on administrative segregation for two years; he has no history of escape or gang affiliation; and he has completed mandatory education requirements. *Id*. at 2. On May 30, 2024, Assistant Commissioner Dickens approved the recommendation to decrease Mr. Shiheed's security status to Max I. ECF 43-14 at 4. As a Max I security level inmate, Shiheed could be transferred to WCI or JCI since both facilities house Max I male inmates and offer more programming. *Id*. The documentation noted that a transfer to either institution would require a "swap with enemies," since Shiheed had known enemies at both institutions. *Id.*

Shiheed's case management plan included a goal "for him to be housed in general population and be assigned to education where he can earn his GED," and "where he can accept a job assignment and work towards his release date." *Id*. at 14. Shiheed's parole review date is in May 2026. ECF 43-13 at 1.

Defendant Mary S. Johnson, Case Manager, who is one of two case managers assigned to administrative segregation at NBCI, explains that case management reviews for administrative segregation inmates take place every 30 days. ECF 43-7 at 1-2, ¶¶ 2 and 4. She denies ever telling

5

Shiheed that he would be required to remain infraction free for four-to-five years before he could get a reduction in security level, but she did explain to him that he would "generally need to remain infraction free for at least three (3) years before being considered for a security reduction." *Id*. at 2, ¶ 8.

The medical records filed by Defendants provide some documentation regarding NBCI's efforts to provide Shiheed with mental health care. ECF 48. The records confirm that Shiheed has Major Depressive Disorder for which he is prescribed Prozac. *Id*. There is an abundance of records stating that Case Management reviewed Shiheed's administrative segregation assignment but that Shiheed did not attend the meeting. *See* ECF 48 at 8, 13, 18, 19, 24, 29, 30, 39, 40, 42, 49, 53, 54, 60, 65, 71, 76, 77. The remaining records submitted do not document anything beyond a simple wellness check (*see* ECF 48 at 80-82) and occasional occurrences where Shiheed did not show up for a scheduled appointment (*see id*. at 47, 79). Shiheed expressed, on multiple occasions, that the Prozac prescribed to him was adequately treating his depression. *Id*. at 20, 36 -38, 43-46, 50- 52, 55 -57, 61- 64, 67, 72 -75.

## II.   Non-Dispositive Motions

### 1.   Motion to Seal

Defendants filed a Motion to Seal the medical records submitted as an exhibit. ECF 45. The majority of the 83 pages of records pertain to Shiheed's mental health treatment and contain his date of birth. *Id*. Local Rule 105.11 (D. Md. 2023), which governs the sealing of all documents filed in the record, states in relevant part: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." The Rule balances the public's

common law right to inspect and copy judicial records and documents, *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right, *see In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The common-law presumptive right of access can only be rebutted by showing that countervailing interests heavily outweigh the public interest in access. *Doe v. Public Citizen*, 749 F.3d 246, 265-66 (4th Cir. 2014). The First Amendment's right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Id.* at 266 (citation omitted). "[S]ensitive medical or personal identification information may be sealed," but not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011). The Motion to Seal, which relates solely to Shiheed's medical records and is unopposed, will be granted.

    2.    <u>Appointment of Counsel</u>

Shiheed filed a Motion for Appointment of Counsel and in support of the motion he states that after his transfer to WCI, he has not been given access to the library. ECF 55. He claims he has been unable to file proper motions because of the lack of library access. *Id.* at 2. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915

does not authorize compulsory appointment of counsel); *see also Jenkins v. Woodard,* 109 F.4th 242, 248 (4th Cir. July 22, 2024) ("…a district court must conduct a fact specific, two-part inquiry to assess whether a case presents exceptional circumstances before it decides whether to appoint counsel" including "whether the plaintiff has a colorable claim" and "considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff lacks the capacity to present it." (internal quotations omitted)).  Exceptional circumstances include a litigant who "is barely able to read and write," *Whisenant* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008) (citing *Waller v. Butkovich*, 584 F. Supp. 909, 947 (M.D.N.C. 1984).  Shiheed has proven himself capable of stating his claims and defending his position in the pleadings filed in this case.  Accordingly, the motion shall be denied.

III. **Motion to Dismiss or for Summary Judgment**

   A. **Standard of Review**

Defendants have filed a motion to dismiss or, in the alternative, for summary judgment. Summary judgment typically is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To present the issue, the nonmovant is typically required to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery. Here,

no Rule 56(d) declaration has been filed. Instead, both parties have attached evidence to their filings. See ECF 43, 53. Accordingly, this Court deems it appropriate to consider both parties' attachments and to treat Defendants' motion as a motion for summary judgment, despite the fact that discovery has not occurred.

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show that a genuine issue exists for trial. Id. The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). A genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999).

In reviewing this motion, the Court also considers Plaintiff's self-represented status. In *Bullock v. Sweeney*, 644 F. Supp. 507, 508 (N.D. Cal. 1986), the court found that a pro se plaintiff's pleadings and motions must be liberally construed. *See also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (noting that writings by self-represented complainants are held to "less stringent standards than formal pleadings drafted by lawyers"). Although the Court applies that more liberal standard in reviewing a self-represented plaintiff's response to a defendant's summary judgment motion, the plaintiff "may not rest on [his] pleadings, but must demonstrate that specific, material facts exist

that give rise to a genuine issue" to be tried before a jury. *Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1120 (4th Cir. 1995) (citations omitted); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied, 513 U.S. 813 (1994).

Moreover, a federal court may not act as an advocate for a self-represented litigant. See *Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1996); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also Maryland v. Sch. Bd.*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

### B. Eighth Amendment - Failure to Protect

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id.* "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v.*

*Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014).  The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety."  *Farmer*, 511 U.S. at 834.  Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn.  *Id*. at 837.  A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence'" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"  *Raynor*, 817 F.3d at 128.

Shiheed has repeatedly asserted that Defendants intentionally exposed him to harm when he was put into general population and, within hours, was stabbed several times. He offers no objective evidence, however, that any of these Defendants knew about the threat posed to Shiheed by his assailants. Indeed, it appears that several of Shiheed's enemies were unknown until he was attacked or threatened again. Further, Defendants took immediate steps to ensure his safety after he was assaulted. The alleged conspiracy by Defendants to have him killed is an unsupported allegation. Defendants are entitled to summary judgment in their favor on this claim.

  **C.**  **Eighth Amendment - Conditions of Confinement**

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  U.S. Const, amend. VIII; *Gregg v. Georgia,*

11

428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016).  Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"[T]to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal alterations omitted).  "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'"  *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).  "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."  *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).  "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."  *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).  Lost opportunity to earn diminution credits or to hold a prison job do not suffice.

To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known, excessive risk of harm to the inmate's health or safety was disregarded.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (applying the deliberate indifference standard to conditions of confinement claims); *see also Thompson v. Virginia*, 878 F.3d 89, 107 (4th Cir. 2017).  "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown*

*v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). To survive summary judgment, Shiheed must show facts sufficient for a reasonable factfinder to conclude that (1) he was exposed to a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Thompson*, 878 F.3d at 107 (citing *Farmer*, 511 U.S. at 834, 837-38) (internal quotations omitted). Shiheed asserts that his prolonged isolation in administrative segregation has contributed to a decline in his mental health, for which he must take medications. ECF No. 28-1 at 7-8. The record evidence supports Defendants' assertion that Shiheed has not suffered a cognizable injury during his stay in administrative segregation. *See* ECF 48. Under 42 U.S.C. § 1997e, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Here, Shiheed has not alleged any physical injury resulting from his confinement on administrative segregation and therefore may not pursue an Eighth Amendment claim for the conditions of his confinement. His need to take Prozac for his depression is simply not enough, standing alone, to demonstrate a cognizable injury without some physical harm. Defendants are also entitled to summary judgment in their favor on this claim.

**IV.    Conclusion**

Summary judgment shall be granted in favor of Defendants by separate Order which follows. Additionally, Defendants' Motion to Seal shall be granted and Shiheed's Motions to Appoint Counsel and for Protective Custody shall be denied.

November 20, 2024                                                     /s/
Date                                                         Stephanie A. Gallagher
                                                             United States District Judge